1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**TERESA JEAN BEAL**,

Plaintiff,

v.

**CAROLYN W. COLVIN**,
Acting Commissioner of Social Security,

Defendant.

Case No.  14-cv-04437-YGR

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 17 and 19

Plaintiff Teresa Jean Beal filed this action seeking judicial review of Administrative Law Judge ("ALJ") Robert Erickson's determination that she is not disabled under the Social Security Act.  Pending before the Court are the parties' cross-motions for summary judgment.  (Dkt. Nos. 17, 19.)  Plaintiff contends the ALJ erred with respect to: (a) finding her shoulder pain was not a severe impairment; (b) failing to consider her shoulder pain and giving less than full weight to the opinion of an examining physician in calculating her Residual Functional Capacity ("RFC"); (c) failing to consider her shoulder pain in finding her capable of performing past relevant work as a dental technician; (d) discounting and failing to address the opinions of two treating physicians; and (e) finding plaintiff not entirely credible.  She also argues the Appeals Council erred in failing to reopen the case to consider additional materials.

Having carefully considered the papers submitted and the administrative record, and for the reasons set forth below, plaintiff's motion for summary judgment and the Commissioner's cross-motion are both **GRANTED IN PART**.  As set forth herein, the Court grants plaintiff's motion with respect to the weight and consideration afforded to Dr. Sanchez's and Dr. Wang's opinions and **REMANDS** the case for further administrative proceedings consistent with this order.

I.    **PROCEDURAL BACKGROUND**

In 2010, plaintiff filed applications for disability insurance benefits and supplemental

security income, claiming that she had been disabled since April 15, 2008. (Dkt. Nos. 9-10 ("AR") at 46.) The Social Security Administration ("SSA") denied plaintiff's request initially and upon reconsideration. (*Id*. at 46.) Plaintiff filed a timely appeal and requested a hearing before an ALJ. (*Id*. at 42.) On August 31, 2011, plaintiff appeared and testified at a hearing. (*Id*. at 46.) In a decision dated September 21, 2011, the ALJ found that plaintiff was not disabled. (*Id*. at 55.)

On November 14, 2011, plaintiff requested review of the ALJ's decision by the Appeals Council ("AC") (AR at 42) and on July 31, 2013, the AC denied plaintiff's request, finding a lack of "reason under our rules to review the [ALJ's] decision" (*id*. at 16).[1] On September 12, 2013, plaintiff submitted a letter and additional documentation to the AC requesting her file be reopened for further review. (*Id*. at 2.) The AC apparently reviewed plaintiff's additional materials and, on August 27, 2014, found no grounds to reopen the file. (*Id*. at 2.) Accordingly, the ALJ's decision became the final decision of the SSA. (*Id*.) Thereafter, plaintiff initiated the instant action, seeking judicial review of the ALJ's decision. (Dkt. No. 1.)

## II.   LEGAL STANDARD

This Court has jurisdiction under 42 U.S.C. § 405(g). The Court may reverse the ALJ's decision only if it "contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). It is "more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Where the evidence is susceptible to more than one rational conclusion, the Court must uphold the ALJ's decision. *See Burch*, 400 F.3d at 679.

The SSA employs a five-step sequential framework to determine whether a particular claimant is disabled. At step one, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). A person is involved in substantial

---

[1] This included an implicit finding that the ALJ did not appear to have abused his discretion, make a legal error, or render a decision unsupported by substantial evidence. (AR at 16.)

United States District Court
Northern District of California

work activity if she engages in work that involves significant physical or mental activities.  20 C.F.R. § 404.1572(a).  Gainful work activity is defined as "work usually done for pay or profit," regardless of whether the claimant receives a profit.  20 C.F.R. § 404.1572(b).  If the claimant is engaged in substantial gainful activity, she is not disabled under the regulation.  Otherwise, the ALJ proceeds to step two.

At step two, the ALJ must determine whether the claimant has an impairment (or combination of impairments) that is severe.  20 C.F.R. § 404.1520(a)(4)(ii).  A "severe" impairment must significantly limit an individual's ability to perform basic work activities.  *Id*. § 404.1521(a).  If the claimant does not have a severe impairment (or combination of impairments) that meets the duration requirement of 20 C.F.R. § 404.1509,[2] she is not disabled pursuant to the regulation.  Otherwise, the ALJ proceeds to step three.

At step three of the sequential evaluation, the ALJ must determine whether the impairment or combination of impairments "meets or equals" the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R §§ 404.1520(a)(4)(iii), 404.1520(d), 404.1526 (providing the applicable standard for medical equivalence of impairments).  If the claimant's impairment or combination of impairments meets the criteria of a listing and the duration requirement, the claimant is disabled.  20 C.F.R. § 404.1520(d).  If the impairment or combination of impairments does not meet the criteria of a listing or does not meet the duration requirement, the ALJ proceeds to step four.

Before addressing step four, the ALJ must determine whether the claimant has the Residual Functional Capacity to perform past relevant work.  20 C.F.R. § 404.1520(f).  A claimant's RFC consists of his ability to engage in physical and mental work activity on an ongoing basis, in spite of any limitations from impairments.  20 C.F.R. § 404.1545.  The ALJ should consider both severe and non-severe impairments in determining the claimant's RFC.  20 C.F.R. §§ 404.1520(e), 404.1545.

---

[2] The duration requirement specifies that the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months" unless it "is expected to result in death."  20 C.F.R. § 404.1509.

At step four, the ALJ must determine if the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant has the RFC to perform past relevant work, she is not disabled under the regulation. If the claimant is unable to do past relevant work or has no past relevant work, the ALJ proceeds to the final step in the sequential evaluation.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience in determining whether the claimant can perform any other work besides past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g). If the claimant can "make an adjustment to other work," she is not disabled under the regulation. Otherwise, she is found to be disabled.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential analysis to determine whether plaintiff was disabled and eligible for disability insurance benefits. (AR at 48.)

### A.    Step One

At step one, the ALJ apparently credited plaintiff's testimony and found that she had "not engaged in substantial gainful activity since April 15, 2008, the alleged onset date." The ALJ reached this finding despite plaintiff having "repeatedly" reported to her treating physicians in 2010 that she was working as a real estate agent. (AR at 48.)

### B.    Step Two

At step two, the ALJ determined that plaintiff suffered from the following severe impairments: coronary artery disease; scoliosis; mitro valve prolapse; hypothyroidism; degenerative disc disease of the lumbar spine; and somatoform disorder. (AR at 48.) The ALJ found that other medical conditions present in plaintiff's medical records, including shoulder pain, were non-severe impairments as the medical documentation did not establish any functional limitations resulting from those conditions. (*Id.* at 49.)

### C.    Step Three

The ALJ found that plaintiff did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (AR at 49.) Specifically, the ALJ found that claimant's mental impairment only mildly restricted her daily living (she was able to perform household chores with

4

assistance and care for her young grandchildren) and social functioning (she was able to talk and interact appropriately at the psychological examination); that her concentration, persistence, and pace were only moderately impaired; and that she had no documented psychiatric hospitalizations or mental health breakdowns lasting for an extended period.  (*Id*. at 49-50.)

### D.    RFC

The ALJ determined plaintiff had a RFC sufficient to perform "light work" with the following modifications: stand or sit no more than six hours of an eight hour workday; frequently perform complex tasks; and generally perform simple, repetitive tasks.  (AR at 50.)  In so finding, the ALJ rejected plaintiff's testimony that she is unable to work in any capacity as a result of her purported inability to sit or stand for more than a few minutes at a time, her need to lie down or recline for most of the day, and her inability to walk other than for short distances with the assistance of a cane.  (*Id*.)  While the ALJ acknowledged her impairments could cause those general symptoms, he rejected her statements regarding their intensity, persistence, and limiting effects as not credible.  (*Id*.)  He noted, according to the record, that she took a month-long vacation in 2008 where she worked on a farm, and the fact that she had not taken any narcotic pain relievers despite her assertions of substantially limiting pain.  (*Id*. at 51.)

The ALJ also observed that plaintiff had provided conflicting reports of her work history—testifying that she had not worked since 2008 but telling physicians in 2009 and 2010 that she was working as a real estate agent and dental technician and reporting to a physical therapist thereafter that she was doing sedentary computer-based work from home.  (*Id*.)  He discredited her testimony regarding her need to use two canes to walk, finding a lack of support in the medical record, a direct contradiction in the physical consultative examiner's report, and the ALJ's observation at the hearing that her second cane appeared flimsy, was "of questionable value if called upon to support" plaintiff, and showed "little evidence of use."  (*Id*.)

The ALJ noted that her scoliosis was stable, her pain had been reduced through physical therapy, and her gait was normal.  (*Id*. at 51-52.)  He observed that in May 2011, she had a checkup without voicing any concerns and her gait was normal.  (*Id*. at 52.)  Two months later, she told her doctor she could only walk short distances with the use of a cane, most recently

1   expressing as her chief concern the need to get her disability forms signed.  (*Id.*)  The ALJ noted

2   her heart palpations had significantly improved since 2005, and that she had denied experiencing

3   any in April and June of 2010 before experiencing brief reoccurrences in subsequent months.  (*Id.*

4   at 52-53.)  He also noted that she reported 30 minutes of daily exercise on the elliptical machine in

5   April 2010.  (*Id.* at 53.)

6        The ALJ gave little weight to the opinion of treating physician Dr. Laura Gross, who

7   opined that plaintiff needed to lie down or recline for 90 percent of an eight hour workday, among

8   other things.  (*Id.*)  The ALJ found that the medical records supported a greater level of functional

9   ability and that Dr. Gross claimed these conditions were present since 2006, yet plaintiff had

10  worked until at least April 2008.  (*Id.*)  The ALJ also noted Dr. Gross's opinion that plaintiff could

11  walk "zero" city blocks was contradicted by plaintiff's statement three months prior that she could

12  walk approximately 100 feet and the ALJ's observations at the hearing, while Dr. Gross's

13  conclusions about plaintiff's ability to sit or stand at work were contradicted by her daily

14  activities.  (*Id.*)

15       The ALJ also questioned plaintiff's complaints of back pain, which she said caused her

16  significant concentration problems, noting she was found to have normal affect, speech, thought

17  and insight in a March 2010 general health visit, she had not taken part in any multidisciplinary

18  pain management program, and testing revealing low-average auditory, visual, and working

19  memory.  (*Id.* at 54.)  He gave less than full weight to Dr. Sanchez's opinion that plaintiff would

20  have some difficulties being socially appropriate or tolerating work stress due to her preoccupation

21  with pain, finding no evidence supporting those conclusions.  (*Id.*)  In contrast, the ALJ gave great

22  weight to mental consultant Dr. Kelly Loomis's assessment, finding it to be supported by the

23  record.  (*Id.*)  Dr. Loomis found plaintiff able to understand, remember, and carry out detailed

24  tasks and to maintain concentration, persistence, and pace in connection therewith, and sufficiently

25  able to deal with coworkers, supervisors, and the general public.  (*Id.*)  The ALJ gave the most

26  probative weight to the opinions of physical consultant Dr. Frank Chen, whose observations were

27  found consistent with the record.  (*Id.* at 53.)  Dr. Chen opined that plaintiff was able to walk

28  normally without her cane, exhibited normal muscle strength in the upper and lower extremities,

6

and was capable of performing light work, with the ability to sit or stand for six hours of an eight hour workday.  (*Id*.)

### E.    Step Four

In light of the RFC noted above and the "credible" testimony of a vocational expert based on a hypothetical, the ALJ found plaintiff capable of performing her past relevant work as a dental technician (both as a ceramic and chair-side technician).  (*Id*. at 54-55.)   Thus, the ALJ concluded that plaintiff was not disabled, pursuant to the Social Security Act, between April 15, 2008 and the date of the ALJ's decision.  (AR at 55.)

## IV.    DISCUSSION

Plaintiff argues the ALJ committed a number of errors while the defendant contends the decision was based on substantial evidence and free of reversible legal error.  The Court addresses below each of the purported errors raised by plaintiff.

### A.    Treating Physician Opinions

Plaintiff contends the ALJ failed to give proper weight to the opinions of her treating physician, Dr. Laura Gross, and treating cardiologist, Dr. Paul Wang.  In determining whether a claimant is disabled within the meaning of the Act, the ALJ must consider all medical opinion evidence.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  Medical opinions are arranged in a hierarchy of three groups, namely opinions from (i) treating physicians, (ii) examining physicians, and (iii) non-examining physicians, with the opinions of treating physicians generally accorded the most weight.  *See Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 692 (9th Cir. 2009) (noting that there are three types of medical opinions in social security cases); *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222 (9th Cir. 2010) (explaining that opinions of treating physicians are entitled to more weight than opinions of examining physicians).  The rationale for giving greater weight to a treating physician's opinion is that he or she is employed to cure and has a greater opportunity to know and observe the patient as an individual.  *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (citations omitted).

The applicable regulation ordinarily requires the agency to give a treating physician's

1   opinion "controlling weight" so long as it "is well-supported by medically acceptable clinical and

2   laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the]

3   case record." 20 C.F.R. § 404.1527(c)(2). The ALJ may reject[3] the uncontroverted (as opposed to

4   contradicted) opinion of a treating physician by providing "clear and convincing" reasons

5   supported by substantial evidence in the record. *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d

6   1194, 1198 (9th Cir. 2008). "The ALJ can meet [the clear and convincing reasons] burden by

7   setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating

8   his interpretation thereof, and making findings." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir.

9   1988) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

10          **1.   Dr. Gross**

11          As noted above, the ALJ gave little weight to Dr. Gross's functional capacity report,

12   wherein Dr. Gross found plaintiff: can only use her hands and fingers five percent of the day; can

13   sit or stand for less than two hours in a workday; can walk for only 2.5 minutes continuously; must

14   recline or lie down for 90 percent of the workday with legs elevated; and suffers from pain which

15   would constantly interfere with her ability to perform even simple work-related tasks. The ALJ

16   discounted this opinion for a number of reasons:

17          • "[T]he medical records support a greater level of functional capacity." (AR at 53.)

18          • ". . . Dr. Gross stated [plaintiff's] level of disability [described in Dr. Gross's

19                  functional capacity report] had been in existence since mid 2006; yet, [plaintiff] did

20                  not allege being unable to work until April 2008." (*Id.*)

21          • Dr. Gross's assertion that plaintiff "can sit for zero minutes continuously and

22                  stand/walk for two and a half minutes continuously is inconsistent with [plaintiff's

23

24          _____

                    [3] The Court recognizes that the ALJ never explicitly "rejects" the opinions of the treating
25   physicians, but rather accords them "little weight" or "limited weight," thereby significantly
     discounting their opinions. This is a distinction without a difference in our case law. The terms
26   "reject" on the one hand and "discount" on the other are used interchangeably by the Ninth Circuit
     in evaluating instances where an ALJ gives less than full credit to the opinion testimony of
27   treating medical sources. *See, e.g., Tommasetti*, 533 F.3d at 1040-41. As such, the Court makes
     no distinction herein between rejecting and discounting opinion testimony of treating medical
28   sources.

United States District Court
Northern District of California

activities of daily living that include cooking as well as cleaning and her presentation at the hearing." (*Id.*)

- ". . . Dr. Gross opined that [plaintiff] can walk zero city blocks, but [plaintiff] stated in a Functional Report only three months prior that she could walk approximately 100 feet." (*Id.*)[4]

Moreover, Dr. Gross's findings were contradicted by those of other physicians, such as Dr. Chen, who opined that plaintiff was able to perform light work, including sitting or standing for six hours of an eight-hour workday. (AR at 53, 514-15 (noting "[g]ait is normal," plaintiff "is able to walk normally without using the cane," and "[n]o weakness or atrophy is noted," and concluding plaintiff lacked "relevant visual, communicative or workplace environmental limitations") Here, the ALJ was permitted to discount the contradicted testimony of Dr. Gross in light of Dr. Chen's findings and other substantial opposing evidence in the record, including in connection with earlier visits to Dr. Gross. (*See, e.g.*, AR at 346 (noting plaintiff's report of walking 30 minutes a day and working in real estate in 2010), 356 (observing in 2010 that plaintiff's "joints are without signs of inflammation, movement is pain free"), 386-87 (discussing plaintiff's planned month-long vacation to Thailand, Laos, and Vietnam, including time "working with animals" on a farm), 568 (noting in 2010 that plaintiff is able to sit for up to 30 minutes "on a physioball at her desk").)

### 2. **Dr. Wang**

Plaintiff next argues the ALJ improperly ignored the opinions of her treating cardiologist Dr. Wang. The ALJ's decision, while not referencing the doctor by name, discusses his findings in some detail, with citations to his notes in the record. (*See* AR at 52, 353.) For instance, the ALJ addressed plaintiff's "long history of mitro valve prolapse and palpitations dating back to her teenage years" and increasing in 2005, but which "can often be controlled" and were significantly reduced with ablation therapy in 2005, such that she denied experiencing palpitations in April and

---

[4] As city blocks are often longer than 100 feet, the Court does not find this particular critique to be highly persuasive.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    June of 2010.  (*Id*. at 52.)  The decision also referenced plaintiff's premature ventricular

2    contractions.  (*Id*.)

3           However, while citing to Dr. Wang's medical notes in the record, the ALJ did not address

4    Dr. Wang's cardiac residual functional capacity questionnaire.  The questionnaire noted certain

5    opinions were limited to the conditions for which he had treated her, and often listed "uncertain,"

6    "unknown," or "NA" in response to queries such as the degree to which plaintiff can "tolerate

7    work stress."  (AR at 832-35.)  Dr. Wang indicated plaintiff's "predominant limitation is due [to]

8    back pain," for which he did not treat her.  (*Id*. at 834.)  Thus, he left blank a large number of

9    questions relating to her functional ability, such as regarding whether she is comfortable at rest but

10   suffers from a marked limitation on physical activity.  (*Id*. at 834-35.)  Nevertheless, Dr. Wang did

11   opine that plaintiff's cardiac symptoms would "frequently" interfere with her attention and

12   concentration needed to perform simple work tasks and that she suffers from symptoms including

13   fatigue, weakness, dizziness, and shortness of breath.  (*Id*. at 832-33.)  As the ALJ did not cite to

14   Dr. Wang's questionnaire or directly address these specific opinions regarding plaintiff's

15   functional capacity, the Court cannot determine whether the ALJ properly rejected Dr. Wang's

16   opinions, improperly rejected them without a specific, legitimate basis, or overlooked them

17   entirely.  "The ALJ must either accept the opinions of [a claimant's] treating physicians or give

18   specific and legitimate reasons for rejecting them."  *Embrey*, 849 F.2d at 422.  As a result of the

19   ALJ's failure to accept or reject explicitly (and with an appropriate basis) the treating

20   cardiologist's opinions, the case must be remanded for consideration of Dr. Wang's opinions as

21   reflected in his residual functional capacity questionnaire.  The Court cannot ascertain whether any

22   error was harmless, as Dr. Wang's opinions were directly relevant to the ALJ's fact-specific

23   overall functionality assessment.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054-56

24   (9th Cir. 2006) (declining to apply harmless error rule on grounds not addressed in the agency's

25   final decision where the ALJ failed to discuss relevant lay testimony that was not "inconsequential

26   to the ultimate nondisability determination").

27       **B.    Shoulder Pain**

28        Plaintiff further contends the ALJ erred, at step two, in finding plaintiff's shoulder

10

United States District Court
Northern District of California

impingements were not severe impairments.  The condition apparently began when plaintiff was helped to remove her coat.  (AR at 361-62.)  Plaintiff argues the finding was contrary to the record, largely relying on Dr. Gross's records.  As noted above, however, the ALJ considered this material but found that her course of treatment, including steroid injections, had "produced great improvement in her symptoms [and] range of motion."  (*Id*. at 49.)  The record may have contained certain observations suggesting, in isolation, that plaintiff suffered from functional limitations resulting from her shoulder impingement.  However, it was also replete with material suggesting this condition was not severe—including the positive results of treatment and the limited impact the condition had on plaintiff's overall functioning and ability to work, along with the lack of need for serious pain management noted above.

For example, the ALJ found—directly supported by the medical record, including plaintiff's own reports to physicians—the absence of instability, swelling, paresthesias (tingling or prickling sensations), or muscle weakness.  (AR at 49, 361-62.)  Plaintiff also reported in the weeks following the shoulder injury that she was not dropping things and, as explicitly noted by the ALJ, that her shoulder pain was already waxing and waning.  (*Id*.)  While she had some decrease in active range of motion, her passive range of motion, rotation, and cross-arm tests remained normal.  (*Id*.)  Her 2011 steroid injections also "produced great improvement" in her symptoms and range of motion.  (AR at 49, 543.)

In any event, the ALJ's determination that the shoulder condition was not severe standing alone would not have altered his ultimate conclusion.  In determining whether plaintiff had the capacity to perform past relevant work, he properly considered all of plaintiff's impairments— including those, like the shoulder impingement, that he found to be non-severe.  (AR at 47-48, 50.) Thus, any error in classification of this condition would have been harmless.  *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (holding an error harmless so long as it did not alter the ultimate outcome of the case).

**C.    RFC**

Plaintiff also argues the ALJ erred in determining her RFC.  Specifically, she points to his purported failure to consider her shoulder and back pain and his decision to give less than full

11

1  weight to Dr. Sanchez's opinion.

2      As to her shoulder pain, the ALJ decision discussed that condition in detail in connection

3  with step two of his analysis, finding it was not a severe impairment (having caused no

4  "significant limitation in her ability to do basic work activities") because steroid injections

5  "produced great improvement in her symptoms as well as range of motion." (AR at 49.)

6  Moreover, in calculating her RFC, the ALJ noted that he had "considered *all* symptoms." (*Id*. at

7  50 (emphasis added).)  The ALJ was not required to reiterate all of the detailed analysis included

8  earlier in his decision in the section calculating RFC, so long as it was clear that those

9  impairments were all considered.

10     As to Dr. Sanchez's opinion that plaintiff would have some difficulty being socially

11 appropriate or tolerating work stress due to her preoccupation with pain, the ALJ gave the opinion

12 "some weight, but not full weight because there is no evidence suggesting [plaintiff is] unable to

13 tolerate work stress or interact appropriately with others."  (AR at 54.)   It appears that the ALJ

14 discounted this opinion in part due to the contrary opinion of Dr. Loomis, who reviewed the paper

15 record and offered an opinion thereon regarding plaintiff's mental functioning.  *See Lester v.*

16 *Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996) ("The opinion of an

17 examining physician is . . . entitled to greater weight than the opinion of a nonexamining

18 physician."); *but see Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)

19 ("But we have consistently upheld the Commissioner's rejection of the opinion of a treating or

20 examining physician, based *in part* on the testimony of a nontreating, nonexamining medical

21 advisor.") (emphasis in original).  Because the Court cannot definitively ascertain the complete

22 basis for the ALJ's decision to discount Dr. Sanchez's opinion, on remand the ALJ shall more

23 clearly articulate an appropriate basis for doing so or, alternatively, provide full weight to Dr.

24 Sanchez's opinion.

25     **D.   Step Four**

26      Plaintiff argues the ALJ erred at step four of the sequential analysis in finding she could

27 perform past relevant work as a dental technician.  Plaintiff's contention here is derivative of her

28 argument regarding RFC and plaintiff's shoulder injury, arguing she would not have been able to

United States District Court
Northern District of California

1    perform the frequent "handling, fingering, and reaching" required for the job in light of that

2    condition.  (Dkt. No. 17-1 at 42.)  As the ALJ properly determined that condition did not

3    materially limit plaintiff's functional capacity, this derivative argument also fails.  *See Stubbs-*

4    *Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008) ("In arguing the ALJ's hypothetical

5    was incomplete, [the claimant] simply restates her argument that the ALJ's RFC finding did not

6    account for all her limitations because the ALJ improperly discounted her testimony and the

7    testimony of medical experts.").

8        **E.    Credibility of Plaintiff's Testimony**

9        Plaintiff further contends the ALJ erred in finding plaintiff's testimony to be "not entirely

10   credible."  To assess a claimant's subjective testimony, an ALJ must engage in a two-step inquiry.

11   *Tommasetti*, 533 F.3d at 1039 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281–82 (9th Cir. 1996)).

12   First, "the claimant 'must produce objective medical evidence of an underlying impairment' or

13   impairments that could reasonably be expected to produce some degree of symptom."  *Id.*  Second,

14   if the claimant provides the evidence required by step one, and there is no affirmative evidence of

15   malingering, then the ALJ can reject the claimant's testimony as to the severity of the symptoms

16   "only by offering specific, clear and convincing reasons for doing so."  *Id.* (citing *Smolen*, 80 F.3d

17   at 1283–84).  "The clear and convincing standard is the most demanding required in Social

18   Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (citation omitted).  An

19   ALJ "may find the claimant's allegations of severity to be not credible," but the ALJ "must

20   specifically make findings which support this conclusion."  *Bunnell v. Sullivan*, 947 F.2d 341, 345

21   (9th Cir. 1991).  In other words, "[t]he ALJ must state specifically which symptom testimony is

22   not credible and what facts in the record lead to that conclusion."  *Smolen*, 80 F.3d at 1284.

23   "These findings, properly supported by the record, must be sufficiently specific to allow a

24   reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible

25   grounds and did not arbitrarily discredit a claimant's testimony . . . ."  *Bunnell*, 947 F.2d at 345

26   (internal quotation marks and citation omitted).  The ALJ may consider inconsistencies between a

27   claimant's testimony and conduct, daily activities, work record, and testimony from physicians

28   and third parties concerning the nature, severity, and effect of the symptoms of which a claimant

United States District Court
Northern District of California

complains.  *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002).  But "[i]f the ALJ's credibility finding is supported by substantial evidence in the record," the reviewing court "may not engage in second-guessing."  *Id.* at 959.

Plaintiff complains that the ALJ merely discounted her testimony based on "boilerplate language."  (Dkt. No. 17-1 at 34.)  The ALJ included numerous bases for his credibility determination, including statements plaintiff made to medical providers regarding ongoing employment, his observations of one of her canes, and substantial material in the record contradicting her claims regarding her functional status.  As the record contains sufficient inconsistencies with plaintiff's testimony, the Court does not disturb the ALJ's finding on this issue.

### F.   Additional Evidence

Plaintiff finally contends the AC improperly failed to consider "new and material" evidence she submitted in connection with her administrative appeal—namely, a website printout regarding her second "flimsy" walking cane which showed "little evidence of use," Stanford Hospital & Clinics medical records, credit card statements, medication information, and letters pertaining to her education, volunteer, and work history.  (*See* AR at 16-20.)  The AC apparently considered the additional evidence submitted, making it a part of the record but noting it found "no reason under our rules" to review the ALJ's decision.  (*Id*. at 16.)  The Court has considered this material in reaching its conclusions herein.  *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012) ("[W]hen a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence.").  However, the Court finds no specific error by the AC in declining to reopen the case in light of this material, much of which was cumulative or of limited relevance.

### V.   CONCLUSION

The Court has the discretion to remand for further proceedings or to award benefits, but where "additional proceedings can remedy defects in the original administrative proceeding" and

United States District Court
Northern District of California

"the Secretary is in a better position . . . to evaluate the evidence, remand is appropriate." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (internal quotations omitted).  For the foregoing reasons, the Court **GRANTS** plaintiff's motion and **REMANDS** the case for further administrative proceedings to consider Dr. Wang's opinion, to provide an appropriate basis for discounting Dr. Sanchez's opinion or to give that opinion full weight, and to consider if appropriate the additional evidence plaintiff has submitted.

This Order terminates Docket Numbers 17 and 19.

**IT IS SO ORDERED.**

Dated: November 10, 2015

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**